**KENTUCKY BAR ASSOCIATION,**
Movant

v.

**Earl C. MULLINS, Jr., Respondent.**

No. 2013–SC–000169–KB.

Supreme Court of Kentucky.

May 23, 2013.

As Modified Aug. 29, 2013.

*OPINION AND ORDER*

The Board of Governors ("Board") of the Kentucky Bar Association ("KBA") recommends this Court suspend Earl C. Mullins, Jr. from the practice of law for ninety (90) days, with sixty (60) days of the suspension conditionally probated for a period of two years. Finding sufficient cause to do so, we adopt the Board's recommendation. Mullins, whose KBA number is 50565 and whose bar roster address is 1012 South 4th Street, Louisville, Kentucky 40202, was admitted to the practice

of law in the Commonwealth of Kentucky on November 1, 1983.

■ This matter arises from Mullins's representation of William Searcy, who was tried and convicted on felony charges of drug use and drug trafficking in October of 1992. In the hope of obtaining a new trial, Searcy retained Mullins to pursue his appeal. Anticipating that the appeal would require significant legal work, and aware that Searcy had limited financial means, Mullins encouraged Searcy to consider using his interest in a parcel of real estate owned by his ex-wife, Janice Hagan, in order to arrange a fee agreement. In accordance with their discussions, the parties executed three documents: 1) a written fee agreement between Searcy and Mullins; 2) a "Revolving Credit Note" by Searcy in favor of Mullins; and 3) a mortgage on Hagan's property which served as security for Searcy's performance on the note. The mortgage specifically recited the fact that it created a mortgage lien against Hagan's property for the purpose of securing payment of the debt set forth in the note. All three documents were executed on November 24, 1992.[1]

After the property was sold, the parties devised a new arrangement wherein Searcy would loan a sum of money to Mullins out of the proceeds of the sale of Hagan's property. That sum would be considered payment of Mullins's legal fees and he would be entitled to those fees as an offset against repayment of the loan. In turn, Mullins would make periodic interest payments on the principal amount of the loan, and those payments would be used to pay child support for Searcy's son and other financial obligations subject to Searcy's direction. The parties executed a revised agreement on December 3, 1992, and Mullins received $5,000.00 that same day.[2] Under the revised terms, Mullins and Searcy agreed that the fee for appealing the matter to the Court of Appeals would be $5,500.00 "plus expenses."[3] By the execution of the revised agreement, Mullins had already received the entire fee: $500.00 for the initial retainer, and $5000.00 from the proceeds of the sale of the Hagan property. Mullins did not advise Searcy to seek the advice of independent counsel regarding the December 3rd agreement.

In late 1992 and early 1993, four other checks were issued to Mullins, totaling $9,511.60. In February of 1993, Mullins received an additional $10,000.00 from Searcy (by and through Hagan). Mullins received a total of $25,011.60 in connection with his representation of Searcy. These funds were not placed into a trust account, as Mullins understood that the checks were issued to him pursuant to the loan agreement. Mullins at all times treated the money as his own, upon receipt.

Mullins made interest payments to Searcy pursuant to the loan agreement from 1993 until 2008. When Searcy's son reached the age of majority, Mullins con-

---

1. In the note, Searcy and Hagan promised to pay Mullins $5,000.00 "or the aggregate unpaid principal balance of any then outstanding invoice or advance of services balance not in excess of" $5,000.00. It further provided that "[t]his Note is executed by and among Mullins and the undersigned [Searcy and Hagan] and is secured by a First Mortgage Lien on real estate in a Mortgage of even date."

2. The check was issued from Mullins's escrow account, where the proceeds from the sale of

Hagan's property had been placed. Mullins's wrote, "[r]etainer from W. Searcy from sale of Hagan property" in the memo line of the check.

3. The November 24th agreement contained language regarding an hourly fee agreement between Searcy and Mullins wherein Searcy agreed to pay $125.00 per hour. This arrangement referenced other legal work unrelated to the criminal appeal.

tinued to deposit the interest payments into Searcy's commissary account at the Kentucky State Reformatory. The interest payments totaled $27,500.00.[4]

Searcy demanded repayment of his loan on several occasions. However, Searcy withdrew his demand on each of those occasions when Mullins would remind him that any repayment of the loan would be offset by legal fees already earned. Mullins maintained time sheets, expense ledgers, and other documentation which he offered to provide to Searcy. However, Searcy told him it was not necessary to provide a complete accounting of his services.

On February 9, 1996, the Court of Appeals issued a final opinion affirming Searcy's conviction. When Mullins approached Searcy with the prospect of proceeding with a motion for discretionary review to the Supreme Court, Searcy authorized him to do so. However, Mullins failed to file the motion in a timely manner and was forced to file a motion for enlargement of time. Mullins sent a letter to Searcy where he enclosed a copy of the Motion for Discretionary Review. He did not, however, include a copy of the separate motion for enlargement of time. In the letter Mullins stated that the motion "had been filed with the Court of Appeals." The Supreme Court ultimately denied Mullins's motion for discretionary review.

On April 19, 1996, Mullins wrote Searcy to inform him that the Supreme Court would not hear his appeal. He did not mention the late filing or the supplemental motion requesting more time, nor did he tell Searcy that the Supreme Court denied discretionary review on the basis of the late filing. Several weeks later, Mullins met with Searcy at the penitentiary in order to discuss some other legal matters. During that meeting Mullins revealed that the motion for discretionary review had been denied due to the filing error and admitted to not telling Searcy about the error because he was embarrassed. Despite Mullins's admission, Searcy insisted that the interest payments continue.

In 2004, Searcy contacted the KBA alleging that Mullins had refused to pay him the money under their loan agreement. Thereafter, with the knowledge of the KBA, Mullins and Searcy met to settle the matter. Mullins advised Searcy to seek new counsel because he did not think he could continue to represent him in light of allegations made to the KBA. Searcy withdrew his demand for an immediate settlement and indicated that the monthly interest payments should continue until further notice. He also attempted to withdraw the bar complaint which led to the underlying inquiry. In various communications with both Mullins and the Office of Bar Counsel, Searcy has asserted that the purpose of filing the bar complaint was to obtain repayment of his loan money. Searcy has further asserted that he did not want Mullins to face any discipline in this matter.

The Inquiry Commission charged Mullins with nine counts of misconduct arising from his representation of Searcy, consisting of violations of: Supreme Court Rule ("SCR") 3.130–1.5(a) (charging an unreasonable fee); SCR 3.130–1.8(a) (entering into a business transaction with a client); SCR 3.130–1.8(e) (providing financial assistance to a client); SCR 3.130–1.15(a) (failing to keep a-client's property separate from the lawyer's own property); SCR 3.130–1.15(b) (failing to promptly notify client of receipt of funds or deliver funds

---

4. After he was released from prison, Searcy obtained new legal counsel and asserted claims against Mullins on the basis of the loan agreements discussed herein. Mullins and Searcy entered into a settlement agreement in 2008 and no lawsuit was ever filed.

to a client); SCR 3.130–1.15(c) (commingling funds); SCR 3.130–1.4(a) (failing to keep client reasonably informed); SCR 3.130–1.4(b) (failing to reasonably explain matters to a client); and SCR 3.130–8.4(c) (engaging in dishonesty, fraud, deceit, or misrepresentation).

Mullins admits that he is guilty of all nine violations and further admits that he needs to be disciplined for the totality of his misconduct. The Office of Bar Counsel and Mullins agreed to submit the case to the Board pursuant to SCR 3.210(2).[5] The parties filed Joint Stipulations which included the facts set forth herein as well as a proposed disciplinary sanction consisting of a ninety (90) day suspension from practice, with sixty (60) days to be probated for a period of two years, with the condition that Mullins receive no additional charges of misconduct during that period and upon completion of the KBA's Ethics and Professional Enhancement Program ("EPEP").[6]

Relying on the facts presented in the Joint Stipulation, the Board found that Mullins admitted to each violation, thereby raising no issues of law to be decided. By a unanimous vote of 17–0, the Board found Mullins guilty of each of the nine counts set forth in the Inquiry Commission's charge. In determining the appropriate discipline to propose, the Board considered several factors. Notably, Mullins has no disciplinary history and he has cooperated fully with the disciplinary proceedings that were pending for seven and one-half years, a delay that has arisen by no fault of either party. Additionally, the Board considered the fact that Searcy and Mullins entered into a settlement in excess of the amount

collected. Accordingly, the Board determined that the appropriate discipline would be, as stipulated, for Mullins to be suspended from the practice of law for ninety days (90), with sixty days (60) of the suspension probated for a period of two years, conditioned upon Mullins not incurring any additional disciplinary charges during the probationary period and completing EPEP, which Mullins has already done.

Upon review of the Board's recommendation, we find that the proposed discipline is appropriate and is supported by this Court's previous decisions. *See Kentucky Bar Association v. McMahon,* 337 S.W.3d 631 (Ky.2011) (an attorney received a 181-day suspension probated for two years for failing to timely proceed with clients' personal injury action and in paying those clients approximately $20,000 over the course of their litigation); *Kentucky Bar Association v. Cook,* 281 S.W.3d 290 (Ky. 2009) (a two-year suspension with thirty days served and the remainder conditionally probated was the appropriate discipline for an attorney who failed to keep his client reasonably informed and failed to diligently pursue a matter on behalf of his client); *Kentucky Bar Association v. Chinn,* 64 S.W.3d 289 (Ky.2002) (an attorney received a thirty-day suspension for failing to diligently pursue client's bankruptcy case, failing to communicate with client, and failing to return client's file and unused portion of advanced fee). Mullins has cooperated fully with the Office of Bar Counsel. He has received no prior discipline over the course of thirty years of practice, and has successfully completed EPEP. Furthermore, Mullins reached a

---

**5.** SCR 3.210(2) provides, in pertinent: "If the parties agree that the answer raises only issues of law, or the Respondent admits the violation, the case shall be submitted directly to the Board."

**6.** Mullins successfully completed EPEP during the pendency of this case.

settlement with Searcy independent of these disciplinary proceedings. We agree with the Board's findings and hereby adopt its recommendation.

Therefore, it is hereby ORDERED that:

1. Earl C. Mullins, Jr. is suspended from the practice of law in this Commonwealth for ninety (90) days, with thirty days (30) to be served and the remaining sixty days (60) probated for two years on the condition that he receive no additional disciplinary charges during that period effective upon the date of entry of this Order.

2. Pursuant to SCR 3.450, Mullins is directed to pay all costs associated with these disciplinary proceedings, in the amount of $1,430.31 for which execution may issue from this Court upon finality of this Opinion and Order; and

3. If Mullins fails to comply with any of the terms of discipline as set forth in this order, upon the Office of Bar Counsel's motion, the Court will impose the remaining sixty (60) day period of suspension, which will result in a total suspension of ninety (90) days and require client notification under SCR 3.390(b).

All sitting. All concur.

ENTERED: May 23, 2013.

/s/ John D. Minton, Jr.
    Chief Justice